Michelle A. Clark, Bar No. 243777
miclark@littler.com
Gerardo Hernandez, Bar No. 292809
ghernandez@littler.com
Emilio A. Rodriguez, Bar No. 340877
earodriguez@littler.com
LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, California  93704.2225
Telephone:  559.244.7500
Fax No.:     559.244.7525

Attorneys for Defendant
UNITED AIRLINES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER SOTO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED AIRLINES, INC.; and DOES 1-10,<br><br>　　　　　Defendants. | Case No. 4:24-cv-03045-HSG<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE**<br><br>Date:　　　September 3, 2024<br>Time:　　　2:00 p.m.<br>Courtroom 2 – 4th Floor<br><br>Honorable: Haywood S. Gilliam, Jr. |

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION AND STATEMENT OF ISSUES ...........................................1

II.   FACTUAL BACKGROUND ..............................................................................2

III.  ARGUMENTS AND AUTHORITIES ...............................................................3

    A.    Plaintiff's Complaint Should Be Dismissed For Failure to State A Claim ...................................................................................................3

    B.    Plaintiff's Claim For Assault Fails As A Matter Of Law ........................4

        1.    Plaintiff's Assault Claim is Barred by the Statute of Limitations .....................................................................................5

    C.    Plaintiff's Claim For Wrongful Termination In Violation of Public Policy Fails As A Matter Of Law ...........................................................6

        1.    Plaintiff Was Never Terminated ...................................................7

        2.    Plaintiff Has Not Pleaded Any Facts Showing A Violation Of Public Policy ......................................................................7

        3.    Plaintiff Has Failed to Plead Discriminatory Motive ...................9

        4.    Failure to Accommodate................................................................12

    D.    The Northern District of Illinois Is The Most Convenient Forum Under the § 1404 Transfer Analysis ....................................................13

        1.    The Private Interest Factors Favor Transfer to the Northern District of Illinois................................................................14

        2.    Other Public Interest Factors Weigh in Favor of Transfer to the Northern District of Illinois. .....................................16

            a.    Judicial Economy Strongly Favors Transfer To Avoid Duplicative Litigation And Inconsistent Results ..............16

            b.    Local Interest in Resolving the Controversy.....................18

            c.    Court Congestion................................................................19

            d.    Forum Familiar with Law Applied.....................................20

IV.   CONCLUSION ...................................................................................21

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. United Airlines, Inc.*,
No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sep. 5, 2023)....................3, 7, 8, 10

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ......................................................................18

*Aryeh v. Canon Business Solutions, Inc.*
(2013) 55 Cal.4th 1185 ...................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................3, 4, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................3, 4

*Berry v. Dep't of Soc. Servs.*,
447 F.3d 642 (9th Cir. 2006) .........................................................................12

*Bird v. Hawai'i*,
935 F.3d 738 (9th Cir. 2019) ...........................................................................6

*Broadnax v. Adams & Assocs., Inc.*,
817 Fed.Appx. 512 (9th Cir. 2020) ................................................................10

*Budwig v. Allegiant Air, LLC*,
No. 1:18-cv-01068-EPG (E.D. Cal. Sep. 2, 2020) ..........................................12

*Caraffa v. United Airlines, Inc.*,
Case No. 24-cv-01250 (N.D. Ill. Sep. 15, 2023)..............................................17

*Caraffa v. United Airlines, Inc.*,
No. 1:23-cv-01800-DAR, Dkt. 11 (N.D. Ohio Feb. 9, 2024) .............................3

*Continental Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960)........................................................................................18

*D'Cunha v. Northwell Health Sys.*,
No. 1:22-CV-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28,
2023) ..........................................................................................................10

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

3

# TABLE OF AUTHORITIES
(continued)

**Page**

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ................................................................13

*Doe v. Cal. Dep't of Corr. & Rehab*,
  43 Cal.App.5th 721 (2019) ..................................................................7

*Duke v. City Coll. of San Francisco*,
  445 F.Supp.3d 216 (N.D. Cal. 2020) ....................................................10

*Ellis v. United Airlines, Inc.*,
  No. 23-cv-123 ..................................................................................3

*Engstrom v. United Airlines, Inc., Air Line Pilots Ass'n, Int'l*,
  22-CV-2130-WWB-DAB, Dkt. 48 (M.D. Fla., June 6, 2023) ....................3, 16

*Estes v. Monroe*,
  120 Cal.App.4th 1347 (2004) ..............................................................11

*Gage v. Mayo Clinic*,
  No. CV-22-02091, 2023 WL 3230986 (D. Ariz. May 3, 2023) ................8, 11

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ..........................................................................16, 19

*Guthrie-Wilson v. Cook County*,
  No. 1:23-CV-362, 2023 WL 8372043 (N.D. Ill. Dec. 4, 2023) ................8, 9

*Guz v. Bechtel National, Inc.*
  24 Cal.4th 317 (2000) ........................................................................10

*Hassett v. United Airlines, Inc.*,
  No. 23 C 14592, 2024 WL 1556300 (N.D. Ill. Apr. 10, 2024) ................8, 16

*Hassett v. United Airlines, Inc.*,
  No. 23-cv-0960-P ..............................................................................3, 8, 15

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) ..........................................................................18

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

# TABLE OF AUTHORITIES
(continued)

**Page**

*Holmes v. Gen. Dynamics Corp.*
  17 Cal.App.4thh 1418 ................................................................. 7

*House v. Rexam Bev. Can Co.*,
  630 Fed. Appx. 461 (6th Cir. 2015) ........................................ 4

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .................................................. 14

*Kay v. Nat'l City Mortg. Co.*,
  494 F. Supp. 2d 845 (S.D. Ohio 2007) .......................... 14, 18

*Leake v. Raytheon Tech Corp.*,
  No. CV-22-00436-TUC-RM, 2023 WL 224857 (D. Ariz. Feb. 27,
  2023) .................................................................................... 11

*Limited v. Tellabs, Inc.*,
  639 F. Supp. 2d 761 (2009) .................................................. 15

*Lockman Found. v. Evangelical Alliance Mission*,
  930 F.2d 764 (9th Cir. 1991) ............................................... 16

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ............................................... 13

*Loury v. Standard Oil Co.*,
  63 Cal.App.2d 1 (1944) ...................................................... 4, 5

*Mack v. Fed. Express Corp.*,
  No. 2:21-CV-01705-SB-JC, 2022 WL 2102889 (C.D. Cal. Jan. 7,
  2022) ...................................................................................... 7

*Mayes v. Kaiser Found. Hosps.*,
  917 F.Supp.2d 1074 (E.D. Cal. 2013) ................................. 10

*McCladdle El v. United Airlines, Inc.*,
  Case No. 1:24-cv-04385 (N.D. Oh. May 8, 2024) ....................... 3, 16

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Metoyer v. Chassman*,
504 F.3d 919 (9th Cir. 2007) ............................................................... 11, 12

*Mid-Continent Cas. Co. v. Petroleum Sols.*,
629 F. Supp. 2d 759 (S.D. Tex. 2009) ......................................................... 14

*Myers v. United Airlines, Inc.*,
No. 1:23-cv-11113, Dkt. 7 (D. Mass. May 17, 2023) ........................................ 3

*Oka v. United Airlines, Inc.*,
2:23-cv-135-DLB-CJS, Dkt. 22 (E.D. Kent. 2023) ............................................ 3

*Oka v. United Airlines, Inc., et al.*,
Case No. 23-cv-15793 (N.D. Ill. Nov. 7, 2023) ............................................. 17

*Panaro, et al. v. United Airlines, Inc.*,
Case No. 4:23-cv-00045-CLC-CHS (E.D. Tenn. Jan. 18, 2024) ..................... 17

*Panaro, et al v. United Airlines, Inc.*,
No. 2023-CV-154 (E.D. Tenn. Nov. 6, 2023) .................................................. 3

*Peterman v. International Brotherhood of Teamsters*,
174 Cal.App.2d 184 (Cal. Ct. App. 1959) ....................................................... 7

*Plotnik v. Meihaus*,
208 Cal. App. 4th 1590 (2012) ................................................................ 4, 5

*Rogers v. Nebraska Urb. Indian Health Coal., Inc.*,
8:22-CV-410, 2023 WL 2990720 (D. Neb. Apr. 18, 2023) ............................. 8

*Safarian v. Maserati North America, Inc.*,
559 F. Supp. 2d 1068 (C.D. Cal. 2008) ........................................................ 13

*Schott v. Ivy Asset Mgmt. Corp.*,
No. 10-1562 LHK, 2010 U.S. Dist. LEXIS 113674 (N.D. Cal. Oct. 19,
2010) ...................................................................................................... 17, 18

*So v. Shin*,
212 Cal.App.4th 652 (2013) ......................................................................... 4

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

# TABLE OF AUTHORITIES
(continued)

**Page**

*Spiegelberg v. Collegiate Licensing Co.*,
402 F. Supp. 2d 786 (S.D. Tex. 2005)......................................................14

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)...................................................................................13

*Troulliet v. Gray Media Grp., Inc.*,
No. CV 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023) ........................8

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010) ...........................................................17

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ...............................................................19

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ...............................................15

*Walters v. Famous Transports, Inc.*,
488 F. Supp. 3d 930 (N.D. Cal. 2020)..................................................20

*Welenco, Inc. v. Corbell*,
Civ. S-13-0287 KJM CKD (E.D. Cal. 2014) ......................................14

*Whitehead v. Pacifica Senior Living Mgmt. LLC*,
No. 21-15035, 2022 WL 313844 (9th Cir. 2022)................................10

*Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*,
No., 22-cv-00315, 2023 WL 3103836 (W.D. Tex. April 25, 2023) ...................3

*Wilson v. Walgreen Co.*,
No. C-11-2930 EMC, 2011 WL 4345079 (N.D. Cal. Sept. 14, 2011)..............13

**Statutes**

28 U.S.C. § 1404....................................................................1, 13, 18

28 U.S.C. § 1404(a) ......................................................13, 14, 17, 18

ADA ..................................................................................................7

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

# TABLE OF AUTHORITIES
(continued)

**Page**

California Code of Civil Procedure Section 335.1 .................................................5

**Other Authorities**

(2 C.C.R. § 11068(c)) .........................................................................12

Congregation For The Doctrine Of Faith (Dec. 21, 2020),
    https://www.vatican.va/roman_curia/congregations/cfaith/documents/r
    c_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html .........................9

Fed. R. Civ. P. 45(c)(1)(a) .....................................................................15

https://www.ncronline.org/news/opinion/catholics-seeking-religious-
    exemptions-vaccines-must-follow-true-church-teaching (last visited
    Jan. 2, 2024)................................................................................2

, https://www.npr.org/2022/01/10/1071785531/on-covid-vaccinations-
    pope-says-health-care-is-a-moral-obligation.....................................9

,
    https://www.vatican.va/roman_curia/congregations/cfaith/documents/r
    c_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html (last
    visited Jan. 2, 2024)......................................................................2

Kevin C. Rhoades and Joseph F. Naumann, Moral Considerations
    Regarding The New COVID-19 Vaccines, United States Conference
    of Catholic Bishops (Dec. 11, 2020), https://www.usccb.org/moral-
    considerations-covid-vaccines;.........................................................9

National Catholic Reporter (Aug. 17, 2021),
    https://www.ncronline.org/news/coronavirus/catholics-have-no-
    grounds-claim-exemption-covid-vaccine-mandates .............................9

Rule 8 ....................................................................................10

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

8

**DEFENDANT UNITED AIRLINES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE**

## I.    INTRODUCTION AND STATEMENT OF ISSUES

Defendant, a Delaware Corporation, is a major American airline that manages its route network from its headquarters in Chicago, Illinois.  Plaintiff, Roger Soto, ("Plaintiff") is a flight attendant based out of the San Francisco International Airport. Plaintiff's claims challenge the lawfulness of Defendant's COVID-19 vaccination policy, which was adopted and implemented by Defendant's personnel in Chicago, in the Northern District of Illinois.

Specifically, Plaintiff alleges that Defendant's vaccination policy violates California's public policy against discrimination and constitutes "assault."  Both claims fail as a matter of law and should be dismissed.  Plaintiff's pleading expressly alleges that he only disclosed his religious beliefs to Defendant after the vaccination policy was implemented, which belies any allegation that it could plausibly have been adopted with discriminatory intent.  Moreover, Plaintiff was not fired because he refused to be vaccinated – he was placed on a temporary leave during the height of COVID proliferation in the United States.  He is now back and work and continues to be employed in the same position he had before the vaccination policy was adopted. Plaintiff's assault claim is similarly meritless since Defendant (a corporation) had neither the means nor intent to "threaten" Plaintiff with any immediate, unwanted touching.  The assault claim is also barred by the statute of limitations.

As an alternative to immediate dismissal, Defendant seeks transfer to the Northern District of Illinois where a number of lawsuits relating to the vaccination policy at issue are pending.   Transfer would be appropriate pursuant to 28 U.S.C. § 1404 because Defendant resides in the Northern District of Illinois and all known sources of evidence, including both witnesses and documentary repositories, are in that

LITTLER
MENDELSON, P.C.
5200 North Palm
Avenue
Suite 302
Fresno, CA
93704.2225
559.244.7500

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

District. Adjudicating the claims in disparate venues wastes judicial and party resources and imposes an unreasonable risk of inconsistent rulings.

For these reasons, Defendant respectfully requests this Court grant its motion and dismiss Plaintiff's Complaint, or in the alternative, transfer it to the United States District Court for the Northern District of Illinois.

## II.    FACTUAL BACKGROUND

Plaintiff is an employee of Defendant. (Compl. ¶ 1.)  He is currently employed – and at all relevant times has been employed- by Defendant as a flight attendant based out of the San Francisco International Airport.  (*Id*.; *see also* Declaration of Kirk Limacher, ("Limacher Decl.") ¶ 7).  Plaintiff acknowledges that Defendant is a Delaware corporation with its principal place of business in Chicago, Illinois.  (Compl. ¶ 7; *see also* Limacher, Decl. ¶ 3).

Plaintiff's Complaint is predicated on Defendant's COVID-19 vaccination policy, which Plaintiff contends was enacted on August 6, 2021.  (Compl. ¶ 13.) Pursuant to the policy and Defendant's Reasonable Accommodation Program, Plaintiff alleges that he was placed on unpaid leave on October 3, 2021, because he elected not to be vaccinated against the COVID-19 virus because of his anti-abortion beliefs. (Compl. ¶¶ 29, 30.)  Plaintiff contends that he sought a "religious exemption" from the COVID-19 vaccination policy based on his belief that "taking an injection of a vaccine that uses aborted fetal tissue . . . violates his strongly held religious beliefs" as a Roman Catholic.[1]  (Compl. ¶¶ 29, 30.)  Plaintiff admits that he was granted a religious exemption from the vaccination policy and that he is still employed by Defendant, but nonetheless alleges that he was "wrongfully discharged."  (Compl., First Cause of Action).

---

[1] The Roman Catholic Church has expressly decried this perspective, finding instead that Catholics have a moral obligation to be vaccinated.  *See, e.g.*, https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html (last visited Jan. 2, 2024); https://www.ncronline.org/news/opinion/catholics-seeking-religious-exemptions-vaccines-must-follow-true-church-teaching (last visited Jan. 2, 2024).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

At all times, the decisions concerning the adoption and implementation of Defendant's COVID-19-related employment policies and its Reasonable Accommodation Program were made in Chicago, Illinois. (Limacher, Decl. ¶ 5.) Since April 25, 2023, Defendant has faced challenges to its COVID-19 vaccination policy across the country, with a critical mass centralized in the Northern District of Illinois[2], or subject to pending transfer motions to the Northern District of Illinois. [3]

## III.  ARGUMENTS AND AUTHORITIES

### A.  Plaintiff's Complaint Should Be Dismissed For Failure to State A Claim

A complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Twombly*, 550 U.S. at 556.  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  The "(f)actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in

---

[2] *See* (App. 0001-0003, *Wickstrom, et al. v. Air Line Pilots Ass'n, Int'l*, No., 22-cv-00315, 2023 WL 3103836, at *5 (W.D. Tex. April 25, 2023) (transferring the case to the Northern District of Illinois); *Oka v. United Airlines, Inc.*, 2:23-cv-135-DLB-CJS, Dkt. 22 (E.D. Kent. 2023) (Order Granting Joint Motion to Transfer); *Hassett v. United Airlines, Inc.*, No. 23-cv-0960-P, at Dkt. 34 (W.D. Tex. Oct. 5, 2023) (transferring the case to the Northern District of Illinois where it is currently pending as No. 23-cv-14592); *McCladdie El v. United Airlines, Inc.*, Case No. 1:24-cv-04385 at *1 (N.D. Oh. May 8, 2024) (granting motion to transfer to Northern District of Illinois); App. 0074-0081, Order, *Anderson v. United Airlines, Inc.*, No. 23-C-989, 2023 WL 5721594 (N.D. Ill. Sep. 5, 2023); App. 0070-0073, Dismissal Orders, *Ellis v. United Airlines, Inc.*, No. 23-cv-123, Dkts. 30, 36 (N.D. Ill. Oct. 18, 2023) (dismissing the case and entering judgment in favor of United); *Caraffa v. United Airlines, Inc.*, No. 1:23-cv-01800-DAR, Dkt. 11 (N.D. Ohio Feb. 9, 2024) (Transfer of Title VII and state law COVID vaccine-related claims);

[3] App. 0025-0049, *Engstrom v. United Airlines, Inc., Air Line Pilots Ass'n, Int'l*, 22-CV-2130-WWB-DAB, Dkt. 48 (M.D. Fla., June 6, 2023) (Defendant's motion to dismiss for improper venue and in the alternative transfer to the Northern District of Illinois)); *see also, id.* at Dkt. 35 (ALPA's motion to transfer); (App. 0050-0069, *Panaro, et al v. United Airlines, Inc.*, No. 2023-CV-154, (E.D. Tenn. Nov. 6, 2023) (state law COVID-19 vaccine related claims); An additional case was voluntarily dismissed. *See Myers v. United Airlines, Inc.*, No. 1:23-cv-11113, Dkt. 7 (D. Mass. May 17, 2023) (Title VII and state-law vaccine claims). Defendant will continue to move to dismiss those filed in improper venues or that lack personal jurisdiction and, in the alternative, to move to transfer the increasing volume of new COVID vaccine cases being filed across the country to the correct and most convenient forum – the Northern District of Illinois.

1   the complaint are true (even if doubtful in fact)." *Id*. If, from the well-pleaded facts,

2   the court cannot "infer more than the mere possibility of misconduct," the plaintiff has

3   not stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. A plaintiff's personal

4   belief that his claim is true, without supporting facts that render his claim plausible, is

5   not sufficient to defeat a motion to dismiss. *See House v. Rexam Bev. Can Co*., 630 Fed.

6   Appx. 461, 463-64 (6th Cir. 2015).

7          **B.    Plaintiff's Claim For Assault Fails As A Matter Of Law**

8        Plaintiff has failed to state a claim for Common Law Assault. To properly plead

9   a claim for Assault, a Plaintiff must allege: (1) defendant acted with intent to cause

10  harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive

11  manner; (2) plaintiff reasonably believed he was **about to be** touched in a harmful or

12  offensive manner or it reasonably appeared to plaintiff that defendant was about to carry

13  out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was

14  harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's

15  harm." *So v. Shin*, 212 Cal.App.4th 652, 668-669 (2013) (emphasis added). "Generally

16  speaking, an assault is a demonstration of an unlawful intent by one person to inflict

17  **immediate injury** on the person of another then present." *Loury v. Standard Oil Co*.,

18  63 Cal.App.2d 1, 5 (1944). Mere words, however threatening, will not amount to an

19  assault. *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1604 (2012). Whether an

20  individual suffered an apprehension of imminent harmful or offensive contact is judged

21  by a reasonable person standard. *Id*.

22       Here, Plaintiff's assault claim fails as the threatened harmful or offensive contact

23  was nothing more than "mere words." *Plotnik*, 208 Cal.App.4th at 1604. Plaintiff

24  alleges that Defendant's COVID-19 vaccine mandate threatened imminent harmful and

25  offensive contact upon him. However, the vaccine mandate at all times was

26  communicated via written policies. There was no person holding a needle to Plaintiff,

27  threatening to inject the vaccine. Indeed, there is no plausible allegation that Defendant

28

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

intended to touch Plaintiff at all as certainly, Defendant would not have administered any vaccination itself.  Assault requires that the threat be "**immediate** injury on the person of another **then present**."  *Id*. at p. 1603.  Additionally, assault requires an imminent threat harmful or offensive touching.  As the Court in *Loury v. Standard Oil Co.* noted, "the pointing of a gun at another in a threatening manner is sufficient to cause fear of personal injury *unless* it is known by the person at whom the weapon is pointed that the gun is in fact unloaded."  *Loury*, 63 Cal.App.2d at 7.  In this case, no reasonable person could have feared immediate harm from the vaccine injection. There was no urgency for the vaccine to be administered, and Plaintiff was never forced to receive it. In fact, Plaintiff's own factual averments preclude any allegation that he was being threatened with immediate injury since he was never forced to obtain the vaccine and instead, opted to engage in the accommodation policy.  Given the circumstances, it would be unreasonable for anyone to believe that Defendant would forcefully vaccinate Plaintiff.  Instead, Defendant offered Plaintiff the option of taking unpaid leave through their reasonable accommodation program. Therefore, as Plaintiff has not alleged anything beyond "mere words," the claim for Common Law Assault is unfounded and must be dismissed.

### 1.    Plaintiff's Assault Claim is Barred by the Statute of Limitations

Plaintiff's assault claim is barred by the statute of limitations.  According to California Code of Civil Procedure Section 335.1, an action for assault of an individual must be commenced within two years of the intentional act.  Plaintiff states in his complaint, "Defendant's coercion, emboldened by tight deadlines, uncompromising exemption protocols, and a hostile and censored work environment, contributed to Plaintiff's stress and fear concerning Defendant's vaccine mandate."  Thus, Plaintiff relies expressly on the original vaccination policy to argue the "threat" and "imminence" of harmful touching to support his assault claim.  Plaintiff cannot, on one

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

hand, argue that the policy's language imposed a threat of "imminent touching" as required for assault – but then also argue that the policy was not assault at all for the purpose of the statute of limitations. According to Plaintiff's own words, his alleged fear started long before the last day he was required to become vaccinated. Because Defendant's policy was enacted on August 6, 2021, and the current action wasn't filed until September 27, 2023, Plaintiff's claim is time barred.

Plaintiff may argue that the continuing violation doctrine tolls the statute of limitations. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1192. However, the doctrine does not apply where, as here, the alleged wrong was discrete and independently actionable and it was not necessary for a series of harms to accumulate for the alleged wrong to become apparent. (*Id*. at p. 1198.) Moreover, as noted in *Bird*, "little remains of the continuing violations doctrine. Except for a limited exception for hostile work environment claims…. Moreover, while we have left room for the systematic branch to apply to class-wide pattern-or-practice claims,…we have consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred." *Bird v. Hawai'i*, 935 F.3d 738, 748 (9th Cir. 2019). As such, Plaintiff's claim for assault fails as a matter of law.

## C.    Plaintiff's Claim For Wrongful Termination In Violation of Public Policy Fails As A Matter Of Law

To establish a *prima facie* claim of wrongful termination in violation of public policy, the Plaintiff must allege: "(1) an employer-employee relationship; (2) that Defendant terminated Plaintiff's employment; (3) that Defendant's termination of Plaintiff's employment violated public policy; (4) that the termination was the legal cause of Plaintiff's damage; and (5) the nature and extent of Plaintiff's damages."

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

*Holmes v. Gen. Dynamics Corp*. 17 Cal.App.4thh 1418, fn. 8. (1993). Wrongful discharge claims may be dependent upon statutory violations such as FEHA. *Peterman v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184 (Cal. Ct. App. 1959). Here, Plaintiff's claims fail because he has not pleaded sufficient facts to demonstrate either wrongful termination or a violation of public policy.

### 1. Plaintiff Was Never Terminated

Here, Plaintiff cannot state a claim for wrongful discharge because he was never discharged. He was, and still is, an employee of Defendant. At most, Plaintiff claims that he was placed on a temporary leave in October 2021 – from which he has since returned. (Compl. ¶¶ 20, 37). But a **voluntary** temporary leave is **not** tantamount to a termination of employment. *Doe v. Cal. Dep't of Corr. & Rehab*, 43 Cal.App.5th 721, 735 (2019). Rather, voluntary unpaid leave is an appropriate form of reasonable accommodation supported by the ADA. *See, e.g.*, *Mack v. Fed. Express Corp.,* No. 2:21-CV-01705-SB-JC, 2022 WL 2102889, at *9 (C.D. Cal. Jan. 7, 2022); *see also Anderson v. United Airlines, Inc*., No. 23 C 989, 2023 WL 5721594, at *5 (N.D. Ill. Sept. 5, 2023), *reconsideration denied*, No. 23 C 989, 2024 WL 1555496 (N.D. Ill. Apr. 10, 2024) (finding that airline workers required to comply with Defendant's COVID-19 vaccine policy did not suffer adverse employment actions). Even if, under certain circumstances, an extended unpaid leave of absence could be considered an adverse employment action, Plaintiff has not pleaded either facts or legal contentions to substantiate such a claim in his current complaint.

### 2. Plaintiff Has Not Pleaded Any Facts Showing A Violation Of Public Policy

Additionally, Plaintiff has not pleaded facts sufficient to support a finding that any discharge was made in contravention of public policy (element 3). The United States District Court for the Northern District of Illinois has undertaken extensive review of the legality of Defendant's COVID vaccine policy and found that it does not

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

1    violate any "statute, rule, or regulation" and therefore, claims premised on its

2    application fail as a matter of law. *See, e.g.*, *Anderson*, 2023 WL 5721594, at *4.

3           To the extent Plaintiff contends that the COVID-19 vaccination policy constitutes

4    religious discrimination, such claims have been rejected by courts all over the country.

5    *Id.* (collecting cases).  As an initial matter, Plaintiff has not and cannot show that there

6    is any conflict between Defendant's COVID-19 vaccination policy and any sincerely

7    held religious beliefs.  *See Hassett v. United Airlines, Inc*., No. 23 C 14592, 2024 WL

8    1556300, at *3 (N.D. Ill. Apr. 10, 2024); *see also Troulliet v. Gray Media Grp., Inc*.,

9    No. CV 22-5256, 2023 WL 2894707, at *5 (E.D. La. Apr. 11, 2023); *Rogers v.*

10   *Nebraska Urb. Indian Health Coal., Inc*., 8:22-CV-410, 2023 WL 2990720, at *5 (D.

11   Neb. Apr. 18, 2023); *Gage v. Mayo Clinic*, No. CV-22-02091, 2023 WL 3230986, at

12   *3 (D. Ariz. May 3, 2023) ("threadbare" reference to religious beliefs insufficient where

13   plaintiff "does not explain her religious beliefs," nor "explain how practicing them

14   conflicted with her employment duties").  "There is no self-evident connection between

15   Christianity" and Defendant's COVID-19 vaccine program and Courts have

16   "dismissed" discrimination claims "under similar circumstances" where plaintiff allege

17   that a practice or policy conflicts with their religious beliefs but fail to include details

18   regarding the offended religious tenant and the nature of the conflict in the Complaint.

19   *Hassett*, 2024 WL 1556400 at *3; *Anderson v. United Airlines, Inc*., 23 C 989, 2023

20   WL 5721594, at *6 (N.D. Ill. Sep. 5, 2023).

21          Here, Plaintiff alleges that he is "a devout traditional Roman Catholic" who

22   believes in "the sanctity of life."  (Compl. ¶ 28.)  Assuming this is true, this allegation

23   "identifies no specific religious tenant that conflicts with COVID-19 vaccination." *See*

24   *Guthrie-Wilson v. Cook County*, No. 1:23-CV-362, 2023 WL 8372043, at *2 (N.D. Ill.

25   Dec. 4, 2023).  To the contrary, Plaintiff's refusal to get a COVID-19 vaccine is

26   premised exclusively on his personal belief that COVID-19 vaccines "use aborted fetal

27

28

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

tissue" and medical convictions, neither of which are spiritual in nature.[4]  *Id*.; Compl. ¶ 29.  Indeed, the Catholic Church has repeatedly characterized COVID-19 vaccination as not only "morally acceptable" but as an "obligation" to "respect the health of those around us.[56]"  As part of its endorsement of COVID-19 vaccination the United States Conference of Catholic Bishops undertook an independent investigation and concluded that "Neither Pfizer nor Moderna used morally compromised cell lines in the design, development, or production of the vaccine" from aborted fetal tissue.[7]  The Conference concluded that "being vaccinated safely against COVID-19 should be considered an act of love of our neighbor and part of our moral responsibility for the common good." *Id*. The Catholic Church's highest doctrinal authority, the Congregation for the Doctrine of Faith, was even more unequivocal, finding that "Catholics have no grounds to claim religious exemption from COVID-19 vaccine mandates.[8]"  In the absence of any factual connection between religious beliefs that are spiritual and nature and Plaintiff's refusal to get vaccinated, there is simply no basis for his claim of religious discrimination.

### 3.    Plaintiff Has Failed to Plead Discriminatory Motive

Plaintiff's claim also fails because he cannot show either discrimination (disparate treatment) based on a protected category or conduct or discriminatory motive.

---

[4] Plaintiff claims that he provided a letter from his priest to substantiate his religious accommodation request. (Compl. ¶¶ 30-33.)  However, Plaintiff does not attach the letter, nor does he provide sufficient factual detail about its contents to support a finding that the letter supported any connection between Plaintiff's bona fide religious beliefs and his refusal to obtain any of the three then-approved COVID-19 vaccinations.  To the contrary, Plaintiff expressly alleges that the letter characterized Plaintiff's concern as "his conflict of conscience" – i.e., a personal and not religious belief.

[5] Associated Press, On COVID vaccinations, Pope says health care is a 'moral obligation, NPR, (Jan. 10, 2022, 7:26 a.m.), https://www.npr.org/2022/01/10/1071785531/on-covid-vaccinations-pope-says-health-care-is-a-moral-obligation.

[6] Luis F. Card, Note on the morality of using some anti-Covid-19 vaccines, Congregation For The Doctrine Of Faith, (Dec. 21, 2020), https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html

[7] Kevin C. Rhoades and Joseph F. Naumann, Moral Considerations Regarding The New COVID-19 Vaccines, United States Conference of Catholic Bishops, (Dec. 11, 2020), https://www.usccb.org/moral-considerations-covid-vaccines;

[8] Jason T. Eberl and Tobias Winright, Catholic's have no grounds for claiming exemption from COVID vaccine mandate, National Catholic Reporter, (Aug. 17, 2021), https://www.ncronline.org/news/coronavirus/catholics-have-no-grounds-claim-exemption-covid-vaccine-mandates

9

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

*Guz v. Bechtel National, Inc.* 24 Cal.4th 317, 355 (2000). At the pleadings stage, a plaintiff must allege some facts supporting the inference that his termination was because of his religion. *See Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844, at *2 (9th Cir. 2022); *Broadnax v. Adams & Assocs., Inc.*, 817 Fed.Appx. 512, 513 (9th Cir. 2020); *see also Mayes v. Kaiser Found. Hosps.*, 917 F.Supp.2d 1074, 1079 (E.D. Cal. 2013) (granting a motion to dismiss plaintiff's discrimination claim because the complaint lacked "meaningful detail suggesting the termination was because of (plaintiff being a member of a protected class)"). The "mere possibility of misconduct" is insufficient and cannot satisfy the Rule 8 pleading standard. *Iqbal*, 556 U.S. at 678; *see also Duke v. City Coll. of San Francisco*, 445 F.Supp.3d 216, 232 (N.D. Cal. 2020).

In this case, Plaintiff alleges that Defendant's COVID-19 vaccination policy, intentionally discriminated against his religious beliefs although he had not previously informed Defendant that he held such beliefs. Plaintiff cannot plausibly plead any connection between his religious beliefs and the COVID-19 vaccination requirement – that applied to all employees – and was implemented before he requested the religious exemption. *See Mayes*, 917 F.Supp.2d at 1079 (granting a motion to dismiss plaintiff's discrimination claim because the complaint lacked "meaningful detail suggesting the termination was because of (plaintiff being a member of a protected class)".) At most, Plaintiff alleges in his complaint that he "was treated differently as compared to similarly situated employees who received . . . COVID-19 vaccines, not because of his religious beliefs." *Anderson*, 2023 WL 2266520 at *6 (citing *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023)) (internal citation omitted). There are no factual averments in the Complaint that would support a finding that the vaccine policy "was adopted because of its adverse effects on" Plaintiff's "religious beliefs." *Id*. Plaintiff's Complaint must be dismissed for the failure to state a claim on that basis alone.

10

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

1    Plaintiff also fails to allege any other circumstantial evidence illustrating a

2 discriminatory motive (element four). Plaintiff has not proffered any facts showing that

3 similarly situated individuals outside his protected class were treated more favorably.

4 To the contrary, Plaintiff alleges that Defendant's COVID-19 vaccination policies were

5 applied equally to all employees, which undermines any claim of discriminatory animus

6 towards Plaintiff. *Leake v. Raytheon Tech Corp.*, No. CV-22-00436-TUC-RM, 2023

7 WL 224857, at *5 (D. Ariz. Feb. 27, 2023) (finding plaintiffs "have not and cannot state

8 a disparate treatment claim" where defendant's vaccination mandate was facially

9 neutral and plaintiffs "fail(ed) to demonstrate they were treated any differently" from

10 other similarly-situated employees); *Gage v. Mayo Clinic*, No. CV-22-02091, 2023 WL

11 3230986, at *3 (D. Ariz. May 3, 2023) (dismissing claim because plaintiff failed to

12 allege facts showing similarly situated individuals outside her religion were treated

13 more favorably, rather than that vaccinated individuals were treated more favorably

14 than non-vaccinated individuals); *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir.

15 2007) (courts evaluate FEHA claims under the Title VII framework). Specifically,

16 Plaintiff alleges that under the policy all employees who remained unvaccinated by the

17 deadline, including those who did not request a medical or religious exemption, would

18 be terminated. Thus, unlike Plaintiff, who requested and was granted temporary unpaid

19 leave, similarly situated employees without religious accommodation requests were

20 treated worse (not better) than Plaintiff.

21    If anything, Defendant treated Plaintiff more favorably than other employees who

22 remained unvaccinated and did not seek or qualify for a religious accommodation.

23 Rather than terminating Plaintiff, Defendant provided him with temporary unpaid leave

24 and returned him to full-time status on or around March 28, 2022. Because Plaintiff

25 has failed to plead a "plausible" case of disparate treatment under FEHA, his wrongful

26 termination in Violation of Public Policy claim must also fail. *Estes v. Monroe*, 120

27 Cal.App.4th 1347, 1355 (2004).

28

11

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

### 4.    Failure to Accommodate

In Paragraph 47 of his Complaint, Plaintiff obliquely avers that Defendant "infringed" Plaintiff's religious beliefs by "denying any reasonable accommodation for his religious conflict with United's vaccine mandate." But a failure to accommodate claim requires that an employee show: "(1) (s)he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) (s)he informed h(er) employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected h(er) to an adverse employment action because of h(er) inability to fulfill the job requirement." *Berry v. Dep't of Soc. Servs*., 447 F.3d 642, 655 (9th Cir. 2006); *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) (courts evaluate FEHA claims under the Title VII framework). As set forth above, Plaintiff cannot show that he had a bona fide religious belief that precluded him from performing his job duties or that he suffered an adverse employment action.

To the contrary, Plaintiff was accommodated – because unpaid leave is a reasonable accommodation when it is "effective in allowing the employee to return to work at the end of leave, with or without further reasonable accommodation." (2 C.C.R. § 11068(c)); *Budwig v. Allegiant Air, LLC*, No. 1:18-cv-01068-EPG, at *9 (E.D. Cal. Sep. 2, 2020).) Here, there was no failure to accommodate because Defendant did, in fact, provide an appropriate accommodation in the form of leave. Plaintiff raises no claim or allegation that he sought a different accommodation or that the accommodation provided was unreasonable in light of the circumstances. Moreover, Plaintiff's Complaint fails to plead specific facts establishing a bona fide religious belief that would have foreclosed him from fulfilling his job duties. (*See* Compl. ¶¶ 29-30.) Plaintiff has not pleaded facts sufficient to demonstrate that Defendant's vaccination policy conflicts with his bona fide religious beliefs or that he was not reasonably accommodated.

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302
F       CA  93704 2025

12

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

**D.    The Northern District of Illinois Is The Most Convenient Forum Under the § 1404 Transfer Analysis**

While Defendant believes that Plaintiff's claims should be dismissed with prejudice because they fail as a matter of law, as an alternative, Defendant urges the Court to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) . "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In ruling on a motion to transfer pursuant to § 1404(a), the court evaluates three elements: "(1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." *Safarian v. Maserati North America, Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008). In determining whether transfer is proper, the court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

While a plaintiff's choice of venue is sometimes given deference in a §1404 venue transfer analysis, such deference is not appropriate in this case. As an initial matter, Plaintiff did not choose the Northern District of California. The case was transferred to this Court and, thus, current venue does not reflect Plaintiff's litigation preferences at all. Moreover, Plaintiff expressly claims that he does not reside in this forum, which further reduces any deference this Court should have to its litigation here. *Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *3 (N.D. Cal. Sept. 14, 2011). Finally, as the Court in *Walgreen*'s noted, that Defendant has some corporate presence here, such a finding does not support maintenance of a lawsuit here when Defendant is a multi-jurisdictional corporation and no unique contacts have been identified in this district. To the contrary, Plaintiff has not pleaded a single operative fact or occurrence in the Northern District of California. *Id.*; *Lou v. Belzberg*, 834 F.2d

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

1    730, 739 (9th Cir. 1987).

2        **1.    The Private Interest Factors Favor Transfer to the Northern**
3            **District of Illinois**

4        According to the Ninth Circuit, there are private and public factors that inform

5    the Court's assessment of the "interests of justice." *Jones v. GNC Franchising, Inc.*,

6    211 F.3d 495, 498-99 (9th Cir. 2000). The relevant private interest factors include:

7        "(1) the location where relevant agreements were negotiated and executed,
        (2) the state that is most familiar with the governing law, (3) the plaintiff's
8        choice of forum, (4) the respective parties' contacts with the forum, (5) the
        contacts relating to the plaintiff's cause of action in the chosen forum, (6)
9        the differences in the costs of litigation in the two forums, (7) the
        availability of compulsory process to compel attendance of unwilling non-
10       party witnesses, and (8) the ease of access to sources of proof."

11   *Jones*, 211 F.3d at 498-99. The relative convenience to the witnesses is often the most

12   important factor to be considered in ruling on a Section 1404(a) motion. *Welenco, Inc.*

13   *v. Corbell*, Civ. S-13-0287 KJM CKD at * (E.D. Cal. 2014); *Spiegelberg v. Collegiate*

14   *Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005). This factor weighs

15   decisively in favor of transferring this action to the Northern District of Illinois. When

16   witnesses are required to travel great distances, including to another state, the factor

17   more strongly favors the location of the witnesses. *Kay v. Nat'l City Mortg. Co.*, 494 F.

18   Supp. 2d 845, 852 (S.D. Ohio 2007). In addition, courts have held that, "(w)hen the

19   distance traveled is beyond 100 miles, inconvenience to witnesses increases in direct

20   relationship to the additional distance to be traveled." *Mid-Continent Cas. Co. v.*

21   *Petroleum Sols.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009) (citing *In re Volkswagen*

22   *AG*, 371 F.3d 201, 204-205 (5th Cir. 2004)).

23       Here, Defendant does not reside in California and there is no connection between

24   this district and the events that gave rise to this lawsuit. The decisions at issue,

25   documents and witnesses, and Defendant's home base of operations are all in the

26   Northern District of Illinois. (Limacher, Decl. ¶¶ 5, 9.) Defendant's headquarters are in

27   Chicago, as are the employees with knowledge of the claims and facts in this case,

28

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302
F          CA 93704 2295

14

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

1   including those who reviewed Plaintiff's requests for accommodation and those who

2   engaged in related communications with him. (Limacher, Decl. ¶ 9.) Subject to further

3   investigation, the witnesses who may testify regarding Plaintiff's requests for

4   reasonable accommodation and have communicated with Plaintiff concerning such

5   include Kirk Limacher, Jennifer Kemp, Carlos Rivera Torres, and Adrienne Kelly, all

6   of whom work within the Northern District of Illinois. (Limacher, Decl. ¶ 9.) These

7   witnesses have relevant knowledge regarding the adoption and implementation of the

8   employment policies at issue.

9       Travel to the Northern District of California would be inconvenient for the

10  witnesses as well as disruptive to their work and Defendant's operations. (Limacher,

11  Decl. ¶ 9.) If the case were to remain in the Northern District of California, these

12  witnesses would be required to travel over 2,000 miles to appear. (Limacher, Decl. ¶

13  9.) Travel time would be, at least, 4-5 hours. Moreover, many (if not all) of the

14  witnesses are beyond the scope of this Court's trial subpoena power as they are located

15  more than 100 miles from this venue. Fed. R. Civ. P. 45(c)(1)(a). The factor of

16  convenience of witnesses, therefore favors transfer to the Northern District of Illinois.

17      Also favoring transfer to the Northern District of Illinois over the Northern

18  District of California is the ease of access to sources of proof because Defendant's

19  material physical evidence related to this action is located in Illinois. Although courts

20  recognize that "access to some sources of proof present a lesser inconvenience now

21  than" in the past due to developments in technology, this does not render the factor

22  superfluous. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 316 (5th Cir. 2008) (en banc)

23  ("*In re Volkswagen II*"). Instead, "almost invariably, this factor will turn upon which

24  party will most probably have the greater volume of documents relevant to the litigation

25  and their presumed physical location in relation to the transferee and transferor venues."

26  *Limited v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (2009) citing *In re Volkswagen II*,

27  545 F.3d at 314-315; (*Hassett v. United Airlines, Inc*., Transfer Order, Case No. 23-cv-

28

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302
F       CA  93704-2225

15

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

0960-P, at Dkt. 34.) (analyzing the volume and location of parties documentary evidence). The bulk of the relevant communications in this matter, including communications about Plaintiff's accommodation request and approval and documents regarding Defendant's vaccine policy and RAP are in the possession of Defendant and are in Illinois. (Limacher, Decl. ¶¶ 5-6.) At a minimum, none of the relevant documentary evidence is located in the Northern District of California. (Limacher, Decl. ¶ 5.) As *Limited* elucidated, the factor of ease of access turns on the physical location of the relevant documents. *Limited*, 639 F. Supp. At 767. Here, the physical location of the relevant documents is Chicago, Illinois. (Limacher, Decl. ¶ 5.) Therefore, this factor supports transfer to the Northern District of Illinois.

### 2. Other Public Interest Factors Weigh in Favor of Transfer to the Northern District of Illinois.

Also favoring the Northern District of Illinois over the Northern District of California are the public interest transfer factors. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). These factors include: "court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991).

### a. Judicial Economy Strongly Favors Transfer To Avoid Duplicative Litigation And Inconsistent Results

There are currently several lawsuits relating to Defendant's COVID-19 vaccination policy that have been addressed and/or are currently in the Northern District of Illinois. *See, e.g.*, *McCladdle El v. United Airlines, Inc*., Case No. 1:24-cv-04385 at *1 (N.D. Oh. May 8, 2024) (granting motion to transfer to Northern District of Illinois); *Hassett v. United Airlines*, Case No. 23C14592, 2024 WL 1556300, at *5 (N.D. Ill. Apr. 10, 2024) (granting motion to dismiss with leave to amend); *Engstrom*, Case No. 6:22-cv-2130-WWB-RMN at *6 (granting motion to transfer claims challenging COVID-19

masking and vaccination policies); *Oka v. United Airlines, Inc., et al*., Case No. 23-cv-15793, at *1 (N.D. Ill. Nov. 7, 2023) (granting joint motion to transfer to Eastern District of Illinois); *Panaro, et al. v. United Airlines, Inc*., Case No. 4:23-cv-00045-CLC-CHS at *1 (E.D. Tenn. Jan. 18, 2024) (Motion to transfer venue pending); *Caraffa v. United Airlines, Inc*., Case No. 24-cv-01250 (N.D. Ill. Sep. 15, 2023) (granting motion to transfer venue to Northern District of Illinois).  Plaintiff himself has argued that these cases are analogous to the claims he presents.  (Dkt. 16 at 4-5.)  At a minimum, the factual issues regarding Defendant's COVID-19 policies and their administration will be largely overlapping, if not identical, to the factual issues that the Northern District of Illinois has had to learn and address a multitude of times already.  "It is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest in judicial economy can be a paramount consideration," particularly where one court is already entertaining cases with substantially overlapping facts and evidence. *In re Vistaprint Ltd*., 628 F.3d 1342, 1347 (Fed. Cir. 2010).  Consideration of the existence of co-pending related cases not only furthers the interests of judicial economy but also avoids the risk of inconsistent judgments and conflicting decisions. *Melo v. Zumper*, Inc., 439 F. Supp. 3d 683, 703–04 (E.D. Va. 2020).

In *Biendara v. RCI, LLC*, the Central District of California evaluated an analogous situation in which the later-filed claims pending before it "contain allegations and facts nearly identical" to previously filed litigation in the District of New Jersey. No. SACV101878AGMLGX, 2011 WL 13137689, at *3 (C.D. Cal. Jan. 24, 2011). While the legal claims at issue were not identical, the Court nonetheless found that "judicial economy would be significantly served by having the two cases heard in the same district." *Id*.  The Court reasoned that "the presence of related litigation in another venue weighs heavily in favor of transfer." *Id*.  (citing *Baird v. Cal Faculty Ass'n*, No. 00-0628, 2000 U.S. Dist. LEXIS 6145 VRW, *3-4 (N.D. Cal., Apr. 24, 2000); *Schott v. Ivy Asset Mgmt. Corp.*, No. 10-1562 LHK, 2010 U.S. Dist. LEXIS 113674 at *12-13

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

1    (N.D. Cal. Oct. 19, 2010). "Due to the similarity between the two cases, transfer will

2    likely greatly prevent the waste of time and money from duplicative litigation, and it

3    will also help avoid duplicative awards, conflicting judgments, or both." *Id*. As such

4    even when "the legal theories may differ between cases" the similarity of facts and

5    evidence at issue "outweighs" the differences and "favors transfer." *Id*. The same

6    reasoning applies here. There is no reason for this court to expend the considerable

7    resources necessary to collect and evaluate the factual evidence at issue, when the same

8    exact facts regarding Defendant's policy and administration thereof have already been

9    presented to the Northern District of Illinois several times.

10       In circumstances such as this, where there is multiple, overlapping cases, it is

11    well-settled that transfer under 28 U.S.C. §1404 is appropriate to avoid duplication of

12    effort and reduce the burden on the courts. See *Continental Grain Co. v. Barge FBL-*

13    *585*, 364 U.S. 19, 20-21 (1960) (Finding transfer of case under 28 U.S.C. § 1404(a) so

14    that two lawsuits arising from single occurrence would be heard in same venue to be

15    "in the interest of justice"); *Kay*, 494 F. Supp. 2d at 854 citing *In re Volkswagen AG*,

16    371 F.3d 201, 203 (5th Cir. 2004). If this case is not transferred, it will not only result

17    in costly and wasteful duplicative litigation, but it imposes a substantial risk of

18    inconsistent rulings with the other cases that are consolidated before the courts in the

19    Northern District of Illinois. As such, this factor weighs heavily in favor of transfer.

20       **b.**    **Local Interest in Resolving the Controversy**

21    Also favoring the Northern District of Illinois over the Northern District of

22    California is "the local interest in having localized interests decided at home." *Hoffman*

23    *v. Blaski*, 363 U.S. 335, 343 (1960). This factor is among the most critical of the public

24    interest factors and favors the location that has an interest where the controversy

25    primarily extends. "This factor most notably regards not merely the parties' significant

26    connections to each forum writ large, but rather the 'significant connections between a

27    particular venue and the events that gave rise to a suit.'" *In re Apple Inc.*, 979 F.3d 1332,

28

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE

1344 (Fed. Cir. 2020) quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). The Supreme Court has noted that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp.*, 330 U.S. at 508-509.

The proposed transferee court will have a significant interest in adjudicating cases involving Defendant since it is based in Illinois. By contrast, there is no local interest in this matter on the part of either the Northern District of California or the citizens of this district who will be called upon to decide this matter because none of the individuals involved reside here. Thus, keeping the case in the Northern District of California would "unduly burden its jury pool." *In re Volkswagen AG*, 371 F.3d at 206 ("(j)ury duty is a burden that ought not to be imposed upon the people of a community" lacking an appropriate connection to the litigation.); *see also Gulf Oil Corp.*, 330 U.S. at 508-509. Defendant is not based in California, none of the alleged acts took place in this district. The lone fact that connects this district to the case is the Plaintiff's residence, but such connection is inconsequential as all the relevant actions being challenged occurred in Illinois not California.

The "local interest factor" further weighs in favor of transfer to the Northern District of Illinois here because this case presents the consequential issue of the legality of a Defendant policy, developed in Chicago, that governed its entire workforce. (Limacher, Decl. ¶ 5.) No court can lay greater claim to an interest in such a matter than one in which Defendant has its principal place of business.

### c. Court Congestion

The factor of court congestion focuses on the "[a]dministrative difficulties (that) follow for courts when litigation is piled up in congested centers instead of being handled at its origin." *Gulf Oil Corp.*, 330 U.S. at 508. The median time from filing to disposition of civil cases in the Northern District of Illinois is 5.7 months, with a total of 965 cases pending. (Rodriguez, Decl. ¶ 3.) By comparison, the Northern District of

California is experiencing a similar backlog of civil matters post-COVID.  The current number of months from filing to disposition is 6.9 months with a total of 1,017 cases pending before its Court.  (Rodriguez, Decl. ¶ 3.)  Of the cases currently in the Northern District of California, over 21% are older than three years while only 13% are in the Northern District of Illinois.  *Id*.  To avoid further over-burdening this Court with a case that is clearly tied to ongoing litigation in Illinois, and which would be more efficiently litigated there, Defendant respectfully requests that the Court transfer this action to its origin in the Northern District of Illinois.

### d.    Forum Familiar with Law Applied

Plaintiff may argue against transfer on the basis that this Court is more familiar with the governing law.  However, as set forth in *Biendra*, even when true, the differing legally theories do not outweigh the prevailing interest in judicial economy that comes from litigating factually similar cases before a single tribunal.  Additionally, as the Court in *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 940 (N.D. Cal. 2020) observed:

> "On a base level, this Court is likely more familiar with the nuances of California law than would be a federal court in another state. However, "[a]ssuming for argument's sake that at least some aspects of [plaintiffs'] claims or the remedies sought would be decided under California law, even if this case is transferred to [Ohio], the court there is equally capable of determining and applying the appropriate state law." *Burke v. USF Reddaway, Inc*., No. 2:12-cv-02641-KJM, 2013 WL 85428, at *6 (E.D. Cal. Jan. 8, 2013). Plaintiffs do not identify any complex issues in this action or unique mechanisms inherent to this Court that would suggest that his case is more suitable for this Court to handle over a federal court in another state. Indeed, even assuming there was a complex issue that required resolution of a novel issue of California law, the Sixth Circuit is

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, TRANSFER VENUE

1    capable of certifying a question to the California Supreme Court just as the

2    Ninth Circuit can so do. *Parr*, 2019 WL 4933583, at \*4 (citing Cal. Rule

3    of Court 8.548)."

4    Similarly, here, the mere fact that California law may be applied to the Plaintiff's

5    case is insufficient alone to justify venue.  The Northern District of Illinois is more than

6    capable of conducting any substantive analysis of California law to the extent necessary.

7    Plaintiff has identified no case law (and Defendant is aware of none) that would allow

8    a party to avoid transfer merely by selectively pleading a slightly different legal theory

9    so it can shop for a forum it deems more favorable to its case.  The public interest factors

10   weigh dispositively in favor of transfer.

11   **IV.    CONCLUSION**

12   Plaintiff's claims against Defendant cannot proceed in this Court for the reasons

13   set forth above.  Plaintiffs have failed to establish that Venue is the most convenient in

14   this district as the events giving rise to the claims occurred in Chicago, Illinois.  Finally,

15   Plaintiff fails to allege sufficient facts to state a claim as a matter of law.

16

17   Dated:                                    LITTLER MENDELSON, P.C.

18

19                                             *Michelle A. Clark*

20                                             Michelle A. Clark
                                               Gerardo Hernandez
21                                             Emilio A. Rodriguez

22                                             Attorneys for Defendant
                                               UNITED AIRLINES, INC.
23

24   4878-8317-9730.1 / 087218-1083
     4878-8317-9730, v. 1
25

26

27

28

LITTLER MENDELSON,
P.C.
5200 North Palm Avenue
Suite 302

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR FAILURE
TO STATE A CLAIM, OR IN THE
ALTERNATIVE, TRANSFER VENUE